UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 10-50082-JLV |
| | ) | |
| Plaintiff, | ) | ORDER DENYING |
| | ) | DEFENDANT'S MOTION TO |
| vs. | ) | DISMISS |
| | ) | |
| LEO VILLARREAL, | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

On August 17, 2010, the government filed an indictment against defendant Leo Villarreal, charging him with one count of aggravated sexual abuse, one count of aggravated sexual abuse of a minor, and one count of sexual abuse.  (Docket 1).  On April 11, 2011, Mr. Villarreal filed a motion to dismiss the indictment for an alleged violation of his statutory right to a speedy trial.  (Docket 32).  The government resisted the motion in its entirety.  (Docket 44).  The court held an evidentiary hearing on May 4, 2011, and received supplemental briefing thereafter.  (Dockets 49 & 50).  Mr. Villarreal's motion is ripe for resolution.

**FACTS AND PROCEDURAL HISTORY**

The court limits its recitation to facts necessary to resolve the pending motion.  The court adduces the following facts from the docket in this case, of which the court takes judicial notice, and the evidence received at the

evidentiary hearing.[1]  This evidence consisted of five exhibits and testimony

from Special Agent Charlie Blackburn of the Federal Bureau of Investigation

("FBI"), State Criminalist Jenny Fosness of the State of South Dakota DCI[2]

Forensic Laboratory ("SDFL"), and former Assistant United States Attorney

Carolyn Olson.

Ms. Olson was the prosecutor originally assigned to this case from the

early investigatory stages until approximately mid-March of 2011.  (HT 88:24-

25; 89:1-18).  Agent Blackburn's involvement in the case began on or about

March 15, 2010,[3] shortly after the FBI learned of allegations of sexual assault

made against Mr. Villarreal.  (HT 13:25; 14:1-3).  Agent Blackburn's primary

role during the investigation was to interview witnesses and collect evidence.

(HT 14:3-5).  There are two alleged victims in this case, L.L.H., a juvenile, and

Marissa Two Lance.  (Docket 1).

On March 18, 2010, Agent Blackburn traveled to the Pine Ridge Indian

Reservation in South Dakota to collect evidence from the residence where the

---

[1]The court shall refer to the transcript of the evidentiary hearing as "HT"
followed by the page number(s) and line number(s) where the corresponding
information may be found.  For example, information found at p. 8 of the
transcript, lines 20-25, and p. 9 of the transcript, lines 1-3, shall be cited to as
"HT 8:20-25; 9:1-3."

[2]Division of Criminal Investigation.

[3]Agent Blackburn did not recall the exact date he began working on the
case.  (HT 13:14-16).  He recalled learning of the investigation the first Monday
after one of the alleged victims, L.L.H., reported the alleged assault to hospital
staff.  (HT 14:19-25).  L.L.H. disclosed the alleged assault on March 13, 2010.
(Exhibit 101 at ¶ 1).  The first Monday after that date was March 15, 2010.

assault allegedly took place and to speak with the alleged victims.  (HT 15:1-17; Exhibit 101 at ¶ 3).  Agent Blackburn collected a bed sheet that was on the alleged victims' bed at the time of the alleged assault.  (HT 18:24-25; Exhibit 101 at ¶ 4).  Sometime later, Agent Blackburn received the underwear of L.L.H. from a tribal law enforcement officer.   (HT 18:10-25; 19:1-6; Exhibit 101 at ¶ 4).  Agent Blackburn examined the bed sheet and underwear using an alternate light source and several areas fluoresced, indicating the possible presence of bodily fluids.  (Exhibit 101 at ¶ 4).

On June 16, 2010, Agent Blackburn obtained a search warrant from Magistrate Judge Veronica L. Duffy for the collection of two saliva samples from Mr. Villarreal.  (Exhibit 101).  Agent Blackburn collected the saliva samples from Mr. Villarreal on June 21, 2010, by means of buccal swabs.  (HT 20:11-13).

On August 17, 2010, the government indicted Mr. Villarreal.  (Docket 1). Law enforcement arrested Mr. Villarreal on August 23, 2010.  On August 24, 2010, Mr. Villarreal appeared before Judge Duffy for an initial appearance, arraignment, and detention hearing.  (Docket 4).  At the consolidated hearing, Mr. Villarreal entered a plea of not guilty; Judge Duffy appointed Mr. Colbath to represent Mr. Villarreal; and Judge Duffy entered an order detaining Mr. Villarreal, finding him both a flight risk and a danger to others or the community.  (Dockets 4, 5, & 6).  Also on August 24, 2010, this court entered its standing order setting the trial for November 2, 2010.  (Docket 10).

On October 4, 2010, Agent Blackburn personally delivered five pieces of evidence to SDFL in Pierre, South Dakota.[4]  (HT 19:13-25; 66:4-6).  The evidence consisted of the bed sheet, the underwear, a buccal swab from Marissa Two Lance, a buccal swab from L.L.H., and a buccal swab from Mr. Villarreal.[5]  (HT 20:3-6).

When delivering the evidence to SDFL, Agent Blackburn instructed staff to conduct DNA[6] testing.  (HT 20:21-25; 21:1-12).  Agent Blackburn also requested a comparative analysis of the alleged victims' DNA and Mr. Villarreal's DNA if biological material was found.[7]  (HT 31:5-14).  Agent

---

[4]SDFL is a division of the office of the Attorney General for the State of South Dakota.  (HT 61:3-7).  SDFL conducts testing exclusively for or at the request of law enforcement.  (HT 60:25; 61:1).  SDFL tests for law enforcement agencies of the State of South Dakota and for the FBI.  (HT 61:9- 64).  Criminalists at SDFL prepare forensic reports and testify at criminal proceedings for the FBI just as for state law enforcement agencies.  (HT 61:25; 62:1-4).  It was Ms. Fosness' understanding the FBI contracted for forensic services with SDFL and a formal contract existed between the two agencies.  (HT 63:4-18).  Ms. Fosness believed the agencies entered into the contract because SDFL could "turn around a report faster[]" than the FBI's own forensic laboratory.  (HT 63:9-10).  Ms. Fosness is an employee of the State of South Dakota and does not work for the FBI or the United States Attorney's Office.  (HT 83:25; 84:1-8).

[5]It is unclear if Agent Blackburn, alone or in collaboration with Ms. Olson, made the decision to have SDFL test the evidence.  Compare HT 39:22-24 with HT 90:1-11.

[6]Deoxyribonucleic acid.

[7]Ms. Fosness described the evidence handling procedure of SDFL as follows.  Evidence was received into the evidence section and stored until, depending on the backlog, technicians were able to work on the case.  (HT 65:8-10).  A serologist conducted an initial examination and screened the evidence to determine if any biological material was present.  (HT 65:10-12).  If biological material was present, the evidence was referred to a criminalist for DNA analysis.  (HT 65:12-14).

Blackburn informed staff of the November 2, 2010, trial date because it was his understanding SDFL "will kind of adjust their schedule of examinations to try to put the ones that have trial dates coming up toward the top of the list." (HT 21:22-25; 22:1-11). SDFL would prioritize its testing if aware of a pending court date or other deadline. (HT 65:22-25; 66:1-3).

Either on October 4, 2010, or the following day, Ms. Olson called SDFL for an estimate of when testing would be completed.[8] (HT 91:1-25; 92:1-3; 95:9-19; 103:1-15). Ms. Olson informed Mr. Colbath of her intention to file a motion to continue the trial and asked Mr. Colbath for his position.[9] (HT 92:5-11).

On October 5, 2010, Ms. Olson moved for a continuance of the trial. (Docket 15). In the motion, Ms. Olson indicated staff from SDFL informed her that DNA analysis would not be completed until the second week of December 2010. Id. at p. 2. Ms. Olson stated SDFL needed to test L.L.H.'s underwear and the bed sheet for the presence of DNA and to conduct the comparative analysis. Id. at pp. 1-2. Ms. Olson requested a 60-day continuance "so that both parties can receive the DNA results, have time to analyze the results, secure additional testing if needed, and engage in meaningful plea negotiations." Id. at p. 2. In the motion, Ms. Olson indicated she discussed

_____

[8]It was Ms. Olson's customary practice to inform SDFL staff of an upcoming trial date when asking for an estimate. (HT 94:1-4, 11-15).

[9]It was Ms. Olson's customary practice to contact defense counsel for his or her position before filing a motion to continue. (HT 92:5-13). If defense counsel did not oppose a continuance, Ms. Olson usually included that information in her motion. (HT 92:14-17).

the status of the DNA testing with Mr. Colbath and Mr. Villarreal did not object to a 60-day continuance.  Id.

On October 7, 2010, the court granted the motion for a continuance and set the trial for December 28, 2010.  (Docket 16).  The court found the ends of justice served by continuing the trial outweighed the best interests of the public and Mr. Villarreal in a speedy trial.  Id. at p. 1.  The court found the delay excludable for speedy trial purposes under 18 U.S.C. § 3161(h)(7)(A).  Id. at p. 2.  Mr. Villarreal filed a waiver of speedy trial on October 12, 2010. (Docket 17).

On November 29, 2010, Ms. Olson moved for a second continuance of the trial.  (Docket 18).  In the motion, Ms. Olson indicated SDFL analyzed the underwear and bed sheet for the presence of DNA, but still needed to complete the comparative analysis.[10]  Id. at p. 1.  Ms. Olson indicated SDFL staff informed her the DNA analysis would not be completed until February 15, 2011.[11]  Id. at pp. 1-2.  Ms. Olson requested a 90-day continuance "so that both parties can receive the DNA results, have time to analyze the results, secure additional testing, if needed, and engage in meaningful plea negotiations."  Id. at p. 2.  In the motion, Ms. Olson indicated she discussed the status of the DNA testing with Mr. Colbath and Mr. Villarreal did not object to a 90-day continuance.  Id.

---

[10]Ms. Olson recalled talking to SDFL staff about this case, but did not recall the exact date of the conversation.  (HT 93:8-15; 103:16-20).

[11]In the motion, Ms. Olson identified February 15, *2010*, as the completion date.  (Docket 18 at p. 2).  Clearly, Ms. Olson meant February 15, *2011*.

On December 1, 2010, Mr. Villarreal filed a waiver of speedy trial. (Docket 19).  On December 3, 2010, the court granted the motion for a continuance and set the trial for March 22, 2011.  (Docket 20).  The court found the ends of justice served by continuing the trial outweighed the best interests of the public and Mr. Villarreal in a speedy trial.  Id. at p. 1.  The court found the delay excludable for speedy trial purposes under 18 U.S.C. § 3161(h)(7)(A).  Id. at p. 2.

On January 28, 2011, Agent Blackburn received an e-mail on his Blackberry from SDFL indicating a report was available for viewing.[12]  (HT 25:3-7).  Due to technical difficulties, Agent Blackburn requested SDFL fax the report to him, rather than downloading the report from the SDFL web page as was the normal procedure.  (HT 25:7-12).  SDFL faxed the report on January 28, 2011.[13]  (HT 24:13-15; 26:13-14; Exhibit 102 at p. 1).  Serologist Jerome Remm prepared the report, which was dated January 28, 2011.  (Exhibit 102 at p. 1).  Mr. Remm detected the presence of semen on the bed sheet, but did not detect the presence of semen on L.L.H.'s underwear.  Id.  Mr. Remm did not detect amylase activity consistent with saliva on the underwear or the bed sheet.  Id.

Either on January 28, 2011, or shortly thereafter, Agent Blackburn informed Ms. Olson of his receipt of the report.  (HT 28:16-25; 29:1-3).

---

[12]It was the customary practice of SDFL to send such e-mail notifications. (HT 25:18-23).

[13]When Agent Blackburn received the report, he was aware trial was set to begin on March 22, 2011.  (HT 28:10-13).

7

Because of Agent Blackburn's initial request for a comparative analysis if biological material was found, SDFL conducted a comparative analysis without further instruction.  (HT 30:15-20; 50:22-25; 51:1-12).  Ms. Fosness conducted the comparative analysis in this case.  (HT 65:14-15).

After learning of and viewing Mr. Remm's report, Ms. Olson informed Mr. Colbath of the results and her intention to disclose jointly the report and Ms. Fosness' report once it was completed.[14]  (HT 106:5-11).  Ms. Olson also recalled speaking with Ms. Fosness the first or second week of February 2011.  (HT 96:19-21; 97:11-25; 98:1-2; 101:4-21).  Ms. Olson asked for an estimate of when the comparative analysis would be completed.[15]  (HT 97:3-5).  Ms. Olson was concerned because she previously represented to the court the comparative analysis would be completed by February 15, 2011, and because the plea deadline was March 8, 2011.  (HT 96:21-25; 97:6-11).  Ms. Olson testified Ms. Fosness gave an estimate of four to six weeks to complete the

---

[14]Ms. Olson discussed with Mr. Colbath the fact "that the finding of semen really didn't have any real meaning until the DNA analysis was complete[.]"  (HT 106:6-9).  She explained the finding of semen was neither exculpatory nor inculpatory because the material needed to be tested to determine who it belonged to.  (HT 106:16-23).

[15]Ms. Fosness did not recall discussing the status of the report with Ms. Olson or Agent Blackburn nor did she recall learning of the March 22, 2011, trial date.  (HT 71:15-25; 72:1-9; 74:11-17; 82:1-3, 8-12).  Ms. Fosness' files did not include any trial deadline, priority designation, or request to expedite testing nor did Ms. Fosness recall learning of any such information.  (HT 86:10-24).  If a request to expedite had been made, Ms. Fosness would have noted it in her files and tried to accommodate it.  (HT 86:25; 87:1-6).  Ms. Fosness could not guarantee the report would be available by a requested deadline.  (HT 87:13-17).

8

testing.[16]  (HT 98:3-7).  In light of this estimate, Ms. Olson knew she would need to file a motion for either a two-week or four-week continuance.  (HT 98:8-9).

Ms. Olson discussed the matter with Mr. Colbath.  (HT 98:9-12, 21). Ms. Olson explained she needed thirty days from the disclosure of the report to the start of trial to review the report, speak to Ms. Fosness about the results, retain rebuttal experts, if necessary, and engage in meaningful plea negotiations.[17]  (HT 98:21-25; 99:1-7; 109:21-25; 110:1-4).  Ms. Olson recalled that Mr. Colbath agreed a thirty-day window was appropriate.  (HT 110:21-25; 111:1-2).

Ms. Fosness took custody of the evidence on February 2, 2011.  (HT 70:1-8).  She began interpreting the lab results on February 22, 2011.  (HT 73:10-16).  Ms. Fosness completed her work and "finalized" the report on February 28, 2011, which is the date on the report.  (HT 67:16-17; 68:22-24; 74:1-3; Exhibit 103).  To "finalize" the report meant, by February 28, 2011, Ms. Fosness completed the testing and her interpretation of the lab results and

---

[16]Ms. Fosness generally advised a report would be available within four to six weeks of the date she took custody of the evidence.  (HT 70:17-25; 71:1-4; 82:6-7, 14-20).  Ms. Fosness would be able to refine her estimate as the process progressed.  (HT 72:16-18).  For example, if the report was almost ready, she would provide an estimate of one week.  (HT 72:19-24; 73:1-2; 85:10-19).  An estimate was not a guarantee.  (HT 85:20-21).

[17]It was Ms. Olson's customary practice to have a thirty-day window in cases involving scientific analyses.  (HT 98:21-24).

forwarded the report to two other staff members for a technical review and an administrative review.[18]  (HT 75:11-17; 86:4-9).

At the end of February of 2011, Ms. Olson attempted to contact Ms. Fosness again to determine the status of the report.  (HT 99:23-25). Because Ms. Fosness was unavailable, Ms. Olson spoke to Paulette Petersen, the evidence custodian for SDFL.  (HT 99:18-19, 25; 100:1-2).  Ms. Petersen indicated she had not seen the report.  (HT 100:2-3).  Ms. Olson knew there was normally a "lag time" from when the report was finalized to when it was available for viewing.  (HT 100:3-6).

Because of the approaching March 8, 2011, plea deadline, Ms. Olson moved for a third continuance on March 2, 2011.[19]  (Docket 24; HT 99:7-9;

_____

[18]Although finalized on February 28, 2011, the report was not ready for viewing until an administrative secretary and an evidence custodian completed necessary administrative duties.  (HT 67:17-25; 75:18-25; 76:19-20; 77:2-3). Ms. Fosness had no control of their schedules.  (HT 76:15-16).  This administrative process could take a day or longer depending on the workload of the staff members involved and if other priorities arose.  (HT 68:5-10; 76:21-23; 77:4-6; 81:9-16).  Once this administrative process was completed, the evidence custodian notified the submitting agent via e-mail the report was available for viewing.  (HT 67:21-25; 68:1).

[19]Ms. Olson never *demanded* SDFL complete testing by a certain date. (HT 104:9-11).  Ms. Olson explained it was typical to have a number of continuances in a case involving scientific evidence.  (HT 104:12-14). Ms. Olson only asked to expedite testing in cases where there had been multiple continuances.  (HT 104:15-20).  Ms. Olson did not make any request to expedite in this case.  (HT 94:16-19; 104:21-23).  Ms. Olson explained many prosecutors used SDFL and she could not ask SDFL to move her case ahead of a state case, for example.  (HT 105:6-11).  Ms. Olson did not request the continuances solely for the purpose of receiving the report, but rather for the multiple purposes of receiving the report, disclosing the report to defense counsel, understanding the results, discussing the results with Ms. Fosness, retaining rebuttal experts, if necessary, and engaging in meaningful plea negotiations.  (HT 108:12-23).

110:8-12).  Ms. Olson did not receive Ms. Fosness' report or know of its existence prior to filing the motion.  (HT 107:17-20).  In the motion, Ms. Olson indicated SDFL completed testing of the underwear, but was still in the process of completing DNA analysis of the bed sheet.  Ms. Olson indicated Ms. Fosness informed her DNA testing and the report should be completed by March 15, 2011.  This information represented the state of Ms. Olson's knowledge at the time she filed the motion.  (HT 112:6-13).  Ms. Olson requested a 30-day continuance to "allow the parties to review the DNA result, hire rebuttal experts if necessary[,] and to enter into meaningful plea negotiations." (Docket 24 at p. 2).  In the motion, Ms. Olson indicated Mr. Villarreal did not object to a 30-day continuance.  Id.

Mr. Villarreal did not file a waiver of speedy trial.  On March 3, 2011, the court granted the motion to continue and set the trial for April 19, 2011. (Docket 25).  The court found the ends of justice served by continuing the trial outweighed the best interests of the public and Mr. Villarreal in a speedy trial. Id. at p. 1.  The court found the delay excludable under 18 U.S.C. § 3161(h)(7)(A).  Id. at p. 2.

On March 9, 2011, Ms. Petersen sent an e-mail to Agent Blackburn informing him of the availability of the report.[20]  (Exhibit 1; HT 34:14-15;

---

[20]Ms. Petersen's e-mail was the only e-mail sent from SDFL from February 28, 2011, to March 9, 2011.  (HT 47:4-7).  This e-mail was typical of the e-mails sent by SDFL to inform Agent Blackburn of the availability of reports.  (HT 47:13-17; 54:7-11).  The e-mail notification process had been in place for approximately two years.  (HT 51:24-25; 52:1-6; 54:12-16).  Short of calling SDFL, the only way to learn a report was available was through the e-mail notification process.  (HT 52:19-23).  The e-mail notification process was standard for SDFL and was done in this case. (HT 66:23-25; 67:1-3, 24-25; 68:1-4).

11

66:23-25; 67:1-2; 78:1-5).  The e-mail should have been sent to Agent
Blackburn's Blackberry in addition to his desktop computer, but it was only
sent to his desktop computer.  (HT 42:22-25).  Because most of Agent
Blackburn's work was done out of the office, he relied on his Blackberry to
review e-mails sent by external sources like SDFL, that is, sources other than
the FBI.  (HT 42:15-25; 43:1-10).  Agent Blackburn did not receive
Ms. Petersen's e-mail on his Blackberry as was customary.  (HT 40:1-6).  He
did not see or open the e-mail on his desktop computer until preparing for the
evidentiary hearing.  (HT 41:15-18; 42:8-11; 48:2-9).

Agent Blackburn first learned of the availability of the report on
March 16, 2011, when he visited SDFL to deliver evidence in an unrelated case.
(HT 35:22-25; 36:6-10; 37:6-14; 44:7-17).  He was surprised to learn the report
was ready.  (HT 53:18-20).  Agent Blackburn printed the report from a
computer at SDFL.  (HT 37:15-21).  Approximately thirty minutes after printing
the report, Agent Blackburn called Ms. Olson and left a voice message
informing her "the analysis had been done."[21]  (HT 39:10-15).  Agent Blackburn
returned to Rapid City shortly before 6 p.m.  (HT 39:15-16; 44:20-21).  He
personally delivered a hard copy of the report to a secretary at the United

_____

[21]Ms. Olson recalled receiving a voice mail from Agent Blackburn
"indicating that the DNA comparison had turned up to be Mr. Villarreal's[.]"
(HT 107:23-25).

States Attorney's Office either on March 17, 2011, or March 18, 2011.[22]  (HT 39:17-21; 44:22-25; 45:1-5).

On March 22, 2011, Assistant United States Attorney Eric Kelderman filed his notice of appearance.  (Docket 26).

Ms. Olson personally did not receive the report until March 24, 2011, because she was out of the office preparing for another trial and also experienced some medical issues requiring attention.  (HT 102:4-9).  Ms. Olson did not return to her office until March 24, 2011.  (HT 102:9-10; 107:22-23). Upon her return, Ms. Olson immediately disclosed both Mr. Remm's and Ms. Fosness' reports to Mr. Colbath.  (HT 102:13-16; 106:2-6; Exhibit 104).

On April 4, 2011, the court entered a pretrial conference order, scheduling the trial to begin on April 19, 2011.  (Docket 27).  On April 5, 2011, Mr. Kelderman moved for a fourth continuance due to the unavailability of Ms. Fosness as an essential witness.  (Docket 28).  Mr. Villarreal objected to a fourth continuance (Docket 29), and Mr. Kelderman moved to withdraw the motion because Ms. Fosness became available to testify.  (Dockets 30).  On

---

[22]Agent Blackburn relied on the United States Attorney's Office to inform him of upcoming trial dates.  (HT 48:17-20).  Agent Blackburn learned of an upcoming trial only when the trial date was near and it was time to prepare for trial.  (HT 48:20-25; 49:1).  Trial preparation generally took place a few weeks before trial.  (HT 55:22-25; 56:1-5).  Agent Blackburn was not aware of every continuance granted in every case.  (HT 49:12-16).  Agent Blackburn did not serve subpoenas or prepare for the March 22, 2011, trial.  (HT 54:17-25: 55:1-2).  Agent Blackburn did not recall speaking with Ms. Olson about the motion to continue filed on March 2, 2011.  (HT 55:3-9).

April 7, 2011, the court granted Mr. Kelderman's motion to withdraw the motion for a fourth continuance.  (Docket 31).

On April 11, 2011, Mr. Villarreal filed a motion the dismiss the indictment for an alleged violation of the Speedy Trial Act ("Act"), 18 U.S.C. § 3161 *et seq.*  (Docket 32).  He alleged bad faith on the part of Ms. Olson in filing the March 2, 2011, motion for a continuance.  (Docket 33).  On April 12, 2011, the court entered an expedited briefing schedule to accommodate the April 19, 2011, trial.  (Docket 34).

On April 13, 2011, the parties filed a plea agreement (Docket 35), statement of factual basis (Docket 36), and plea agreement supplement (Docket 37).  The court set a change of plea hearing for April 19, 2011.  (Docket 38). On April 18, 2011, Mr. Villarreal moved to withdraw the plea agreement and supporting documents.  (Docket 38).  The court granted the motion the same day.  (Docket 40).

On April 19, 2011, the court entered an amended briefing schedule with respect to Mr. Villarreal's motion to dismiss.  (Docket 43).  The parties completed briefing on April 28, 2011.  (Dockets 44 & 45).  On May 3, 2011, the court entered an order setting an evidentiary hearing on Mr. Villarreal's motion for May 4, 2011.  (Docket 46).  The court held the hearing on the scheduled date.  During closing argument, Mr. Colbath expanded the scope of the motion to dismiss, challenging the granting of all three motions for continuances filed by Ms. Olson.  (HT 114-136).  At the close of the hearing, the court allowed

Mr. Kelderman and Mr. Colbath to submit supplemental briefing, which they did on May 6, 2011, and May 11, 2011, respectively.  (Dockets 49 & 50).

## DISCUSSION

Mr. Villarreal challenges the motions for continuances filed by Ms. Olson on October 5, 2010, November 29, 2010, and March 2, 2011.  (Dockets 33, 45, & 50).  Mr. Villarreal argues the periods of delay caused by the three continuances are not excludable under the Act.  Id.  Specifically, Mr. Villarreal alleges lack of diligent preparation led to the filing of the first and second motions for continuances and bad faith led to the filing of the third motion for a continuance.  (HT 131:9-20).  Afer setting forth the law regarding the Act, the court will address each motion in turn.

**A.     The Act**

A criminal defendant's right to a speedy trial is guaranteed by the Act.[23] The Act is "designed to protect a criminal defendant's constitutional right to a speedy trial and to serve the public interest in bringing prompt criminal proceedings[.]"  United States v. Williams, 557 F.3d 943, 950 (8th Cir. 2009) (citation and internal quotation marks omitted).  The Act specifies a time limit in which a defendant must be brought to trial.  18 U.S.C. § 3161.  The Act requires a defendant be brought to trial within seventy days of his indictment or arraignment, whichever is later.  18 U.S.C. § 3161(c)(1); Williams, 557 F.3d at 950.

---

[23]The court notes Mr. Villarreal's motion to dismiss (Docket 32), as supplemented (Dockets 45 & 50), implicates only the Act and not the constitutional right to a speedy trial guaranteed by the Sixth Amendment.

The Act describes periods of delay that "shall be excluded in computing the time within which . . . the trial of any such offense must commence[.]" 18 U.S.C. § 3161(h).  One such period of excludable delay is "[a]ny period of delay resulting from a continuance granted by any judge . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7)(A).  The Act precludes the court from granting a continuance because of, in part, lack of diligent preparation.  18 U.S.C. § 3161(h)(7)(C).

"After these days are excluded, if the total number of non-excludable days exceeds seventy, then the district court must dismiss the indictment upon the defendant's motion." United States v. Aldaco, 477 F.3d 1008, 1016-17 (8th Cir. 2007); see also Williams, 557 F.3d at 950 (dismissal of the indictment is mandatory upon the defendant's motion if a violation of the Act occurred).  The defendant has the burden of proof to support the motion, with the exception of the exclusion of time under 18 U.S.C. § 3161(h)(3) concerning the unavailability of the defendant or an essential witness.  Aldaco, 477 F.3d at 1017 (citing 18 U.S.C. § 3162(a)(2)); see also Williams, 557 F.3d at 950; United States v. Elmardoudi, 501 F.3d 935, 941 n. 6 (8th Cir. 2007) (rejecting defendant's contention that the government must prove excludability, noting § 3162(a)(2) put the burden of going forward on the government only for the exclusion of time necessitated by the absence or unavailability of the defendant or an essential witness); United States v. Cordova, 157 F.3d 587, 599 (8th Cir.

1998).  "To meet that burden the defendant must demonstrate that more than 70 non excludable days have passed from the date the clock began to run." Williams, 557 F.3d at 950.

A dismissal of the indictment for a violation of the Act may be with or without prejudice.  United States v. El-Alamin, 574 F.3d 915, 922 (8th Cir. 2009).  In determining whether to dismiss an indictment with or without prejudice, the court must consider the following non-exhaustive factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of re-prosecution on the administration of speedy trial laws and on the administration of justice.  El-Alamin, 574 F.3d at 922; United States v. Richardson, 537 F.3d 951, 957 (8th Cir. 2008).  A court should also consider the prejudice to the defendant resulting from the violation.  Richardson, 537 F.3d at 957 (upholding the district court's finding of lack of prejudice where the defendant failed to assert the violation impeded the preparation of his defense).

A dismissal with prejudice is more appropriate when the government acts in bad faith.  United States v. McKinney, 395 F.3d 837, 842 (8th Cir. 2005); see also United States v. Koory, 20 F.3d 844, 847-48 (8th Cir. 1994) (negligence on the part of the government required dismissal, but circumstances did not justify dismissal with prejudice where there was no showing the government's claimed negligence was an attempt to gain a tactical advantage or the government regularly or frequently failed to meet the time limits of the Act).

Where the offense charged is serious, the court should dismiss the indictment with prejudice only for a correspondingly severe delay. <u>Koory</u>, 20 F.3d at 848.

The Court of Appeals for the Eighth Circuit reviews a district court's legal conclusions *de novo*, its factual findings for clear error, and its ultimate determination for an abuse of discretion. <u>United States v. Lucas</u>, 499 F.3d 769, 782 (8th Cir. 2007); <u>see also</u> <u>Richardson</u>, 537 F.3d at 957 (reviewing for an abuse of discretion the district court's decision to dismiss the indictment without prejudice instead of with prejudice).

**B.    October 5, 2010, Motion to Continue**

Mr. Villarreal argues Ms. Olson's first motion for a continuance at best was misleading and at worst was made in "reckless disregard of the truth amounting to bad faith."[24]  (Docket 50 at p. 3).  In the continuance motion, Ms. Olson indicated SDFL was analyzing the underwear and bed sheet for the presence of DNA and still needed to complete the comparative analysis. (Docket 15).  Mr. Villarreal alleges Ms. Olson did not inform the court nor defense counsel of the "crucial" fact the evidence was submitted to SDFL the day before Ms. Olson filed her motion.  (Docket 50 at p. 3).  Mr. Villarreal also alleges Ms. Olson unreasonably delayed submitting the evidence to SDFL for testing.  (HT 115-117).  Finally, Mr. Villarreal argues Ms. Olson's failure to

---

[24]In his closing argument at the evidentiary hearing, Mr. Colbath stated he did not believe Ms. Olson acted in bad faith in filing the October 5, 2010, motion for a continuance, but rather believed Ms. Olson was not diligent in her trial preparation.  (HT 118:1-17).

ask SDFL to expedite its testing demonstrated a lack of diligence.  (HT 118:5-17).

     The court finds Mr. Villarreal's arguments to be unavailing.  The government indicted  Mr. Villarreal on August 17, 2010.  (Docket 1).  Agent Blackburn submitted the evidence for testing seven weeks later.  The court does not find this delay to be unreasonable or indicative of a lack of diligence, particularly since the government was under no obligation to have the evidence tested in the first place.

     Nor does the court find Ms. Olson was misleading in her motion. Ms. Olson called SDFL on October 4, 2010, the day the evidence was submitted, to inquire when testing would be completed.  Lab staff gave her an estimate of the second week of December 2010–nearly nine weeks later. Ms. Olson had no control over SDFL's backlog nor its schedule.  Ms. Olson filed the motion for a continuance as soon as practicable.  Even if Ms. Olson informed the court the evidence was submitted for testing on October 4, 2010, the court's decision would have remained the same.  Further, Ms. Olson was under no duty to inform Mr. Colbath of the date the evidence was submitted for testing, and nothing prevented Mr. Colbath from inquiring.  Indeed, Ms. Olson was under no obligation to obtain Mr. Colbath's approval before filing the motion for a continuance.  Even if Mr. Colbath objected to the continuance motion, the court would have found it was in the best interests of justice to grant the continuance given the potential of DNA testing to inculpate or exculpate Mr. Villarreal.

Finally, Ms. Olson had no obligation to ask SDFL to expedite testing.  Ms. Olson testified continuances were usual and expected in cases involving scientific evidence.  The court does not see anything particularly exceptional in this case to warrant a request to expedite since the case was in its early stages as of October 5, 2010.  The court finds the October 5, 2010, motion for a continuance was proper and the delay was excludable under 18 U.S.C. § 3161(h)(7)(A).

## C.    November 29, 2010, Motion to Continue

Mr. Villarreal's objections to the second motion for a continuance are without merit and may be easily disposed of.  In the continuance motion, Ms. Olson explained SDFL analyzed the underwear and bed sheet for the presence of DNA, but still needed to conduct the comparative analysis, which would not be completed until February 15, 2011.  (Docket 18 at pp. 1-2). Mr. Villarreal argues this information was "suspect, and likely inaccurate" because Mr. Remm's report indicated the first stage of testing was not completed until January 28, 2011.  (Docket 50 at p. 4).  The court notes the report is *dated* January 28, 2011, but there is no indication of when the first stage of testing was done.  The court finds credible Ms. Olson's testimony that she contacted SDFL and was provided the information contained in her continuance motion.

Mr. Villarreal argues Ms. Olson should have asked SDFL to expedite testing and her failure to do so demonstrated a lack of diligence.  (HT 118:23-25; 119:1-4).  Again, Ms. Olson had no obligation to make such a request.

20

Even if she had made the request, SDFL would not guarantee it could meet the deadline.  Further, Mr. Colbath certainly could have objected to the motion for a continuance or could have asked Ms. Olson to make a request to expedite. The court finds the November 29, 2010, motion for a continuance was proper and the delay was excludable under 18 U.S.C. § 3161(h)(7)(A).

## D.     March 2, 2011, Motion to Continue

Mr. Villarreal challenges most strenuously Ms. Olson's motion for a third continuance.  In the motion, Ms. Olson represented SDFL was in the process of completing the comparative analysis and a report should be completed by March 15, 2011.  (Docket 24 at p. 1).  Mr. Villarreal alleges Ms. Olson acted in bad faith by filing the motion because Ms. Fosness' report was finalized on February 28, 2011.  (Dockets 33, 45, & 50; HT 119-131).

Based on the evidence presented at the hearing, the court finds the continuance motion to be proper.  Mr. Villarreal ignores the fact that although the report was finalized on February 28, 2011, it was not available for viewing until March 9, 2011, a week after Ms. Olson filed the continuance motion. Trial was set to begin on March 22, 2011.  (Docket 20 at p. 2).  If Ms. Olson did not file the continuance motion and received the report at the earliest available opportunity, that is, March 9, 2011, she and Mr. Colbath would have had only thirteen calendar days to review the report, discuss the results with Ms. Fosness, if necessary, retain rebuttal experts, if necessary, and engage in meaningful plea negotiations.  Ms. Olson and Mr. Colbath both agreed a thirty-day window was appropriate in a case involving scientific evidence.  The court

21

also notes Ms. Olson filed the continuance motion to have sufficient time to accomplish all of the tasks listed above, not for the sole purpose of receiving the report.  Further, Ms. Olson had to file the continuance motion before March 8, 2011–the deadline for a plea agreement, other motions, and subpoenas for trial.

The court considers the state of Ms. Olson's knowledge at the time she filed the continuance motion.  Ms. Olson spoke to Ms. Fosness in early February of 2011, and Ms. Fosness gave an estimate of four to six weeks for the completion of the report.  At the end of February, Ms. Olson spoke to Ms. Petersen about the status of the report, and Ms. Petersen indicated she had not seen the report.[25]  As the evidence custodian, Ms. Petersen is the last SDFL staff person to handle the report.  If the report had not reached Ms. Petersen, it was not available for viewing.

Ms. Olson understandably relied on Ms. Fosness' and Ms. Petersen's representations when filing the continuance motion.  As Ms. Petersen had not seen the report and could not provide an estimate as to when the report would be completed, Ms. Olson relied on Ms. Fosness' estimate, which put the completion date at March 15, 2011.  The information contained in the

---

[25]Mr. Villarreal argues Ms. Olson should have informed Mr. Colbath and the court of Ms. Petersen's representation.  (HT 125:7-10; 127:23-25; 128:1).  The court is hard pressed to see how this information would have been useful.  Ms. Petersen's conversation with Ms. Olson did not alter the time estimate Ms. Fosness gave, information known by Mr. Colbath.  It would have been illogical for Ms. Olson to contact Mr. Colbath to inform him the status of the report had not changed since the last time they spoke a few weeks earlier.

continuance motion reflected the state of affairs as Ms. Olson understood it. As of March 2, 2011, the report was not available for viewing.  The events that occurred after March 2, 2011, are irrelevant to the analysis.  Accordingly, the court finds the March 2, 2011, motion for a continuance to be proper and the delay excludable under 18 U.S.C. § 3161(h)(7)(A).  Mr. Villarreal's right to a speedy trial as guaranteed by the Act was not violated by any continuance granted in the case.

## CONCLUSION

In accordance with the above discussion, it is hereby

ORDERED that Mr. Villarreal's motion to dismiss (Docket 32) is denied.

Dated June 3, 2011.

BY THE COURT:

/s/ Jeffrey L. Viken_____
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE